UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BUILDING SERVICE 32BJ HEALTH FUND, BUILDING
SERVICE 32BJ PENSION FUND, BUILDING SERVICE
32BJ LEGAL SERVICES FUND, BUILDING SERVICE
32BJ THOMAS SHORTMAN TRAINING,
SCHOLARSHIP AND SAFETY FUND, and BUILDING
SERVICE 32BJ SUPPLEMENTAL SAVINGS AND
RETIREMENT FUND,

                            Plaintiffs,

            -against-

RENAISSANCE EQUITY HOLDINGS, LLC,
RENAISSANCE EQUITY HOLDINGS, LLC A,
RENAISSANCE EQUITY HOLDINGS, LLC B,
RENAISSANCE EQUITY HOLDINGS, LLC C,
RENAISSANCE EQUITY HOLDINGS, LLC D,
RENAISSANCE EQUITY HOLDINGS, LLC E,
RENAISSANCE EQUITY HOLDINGS, LLC F,
RENAISSANCE EQUITY HOLDINGS, LLC G,
RENAISSANCE EQUITY HOLDINGS CO. LLC,
RENAISSANCE EQUITY, LLC.
VANDERVEER ESTATES LLC

                         Defendants,.

------------------------------------------------------------------------X

PLAINTIFFS' STATEMENT OF THE
ELEMENTS OF THEIR CAUSES OF
ACTION

08-CV- 9264(DC)

       Pursuant to the Individual Practices of the Honorable Denny Chin, Rule (3)(B)(ii), Plaintiffs

Building Service 32BJ Health Fund ("Health Fund"), Building Service 32BJ Pension Fund ("Pension

Fund"), Building Service 32BJ Legal Service Fund ("Legal Fund"), Building Service 32BJ Thomas

Shortman Training, Scholarship and Safety Fund ("Training Fund"), and Building Service 32BJ

Supplemental Savings and Retirement Fund (" Retirement Fund"), herein collectively referred to as

the "Funds," by their attorneys Raab, Sturm, Goldman & Ganchrow, LLP, provide this statement of

the elements of their case:

## INTRODUCTION

       This is an action brought under ERISA (29 U.S.C. § 1132(e) (1)) and under the Taft-Hartley

Act (29 U.S.C. § 185 et seq) seeking payment of contributions owed by Defendants to the Funds pursuant to ERISA and pursuant to the collective bargaining agreements between Defendants and Service Employees International Union Local 32BJ (herein referred to as the "Agreement").

The action is premised upon the statutory scheme of ERISA which was enacted specifically to address the types of abuses of contributing employers as at hand. As the Second Circuit summarized:

> "Delinquencies of employers in making required contributions are a serious problem for most multiemployer plans. Failure of employers to make promised contributions in a timely fashion imposes a variety of costs on plans....
>
> Recourse available under current law for collecting delinquent contributions is insufficient and unnecessarily cumbersome and costly. Some simple collection actions brought by plan trustees have been converted into lengthy, costly and complex litigations concerning claims and defenses unrelated to the employer's promise and the plans' entitlement to the contributions. This should not be the case. Federal pension law must permit trustees of plans to recover delinquent contributions efficaciously....
>
> Alco Express Co., 522 F. Supp. At 927-28 (quoting Staff of Sen. Comm. on Labor and Human Resources, 96th Cong., 2d Sess., S.1076, The Multiemployer Pension Plan Amendments of 1980: Summary and Analysis of Consideration (Comm. Print 1980) 43-44)."

Iron Worker District Council v. Hudson Steel Fabricators and Erectors, 68 F3d 1502, 1506 (2d Cir. 1995). The Funds will demonstrate that when this action was commenced the Defendants had simply stopped contributing to the Funds as required under the Agreement. Since the action was brought Defendants have still refused to pay their share of the contributions owed.

Defendants believe that their obligations to contribute are different from all other contributing employers. They have taken isolated words from the Agreement and turned same on their head in an effort to avoid paying in full and on time. As will be summarized below, there are two legal bases for relief, contractual and statutory under ERISA. The Funds will be seeking most

of the relief under ERISA.  There is one area of relief sought which is not covered by ERISA and for this area relief will be sought based on traditional federal contract law as same applies to collective bargaining agreements.

## ERISA CAUSE OF ACTION

This action was commenced in late October 2008, after Defendants missed three consecutive quarterly payments to the Funds (April, July, and October 2008).   After suit was joined, these amounts (totaling close to three quarters of a million dollars), were paid.   However, there remained other sums due to the Funds which remained unpaid.

The Defendants assumed the collective bargaining agreement of their predecessor effective October 5, 2009.  The Agreement covers the building service employees (porters, handypersons and superintendents) employed at a large apartment complex located in Brooklyn, New York, now known as Renaissance Plaza.  Since assuming the Agreement, Defendants have refused to pay for Health Fund insurance in advance.  The Funds' rules and policies require this sum to be paid advance, i.e. at the beginning of the calendar quater to cover employees for health insurance for that quarter.  Hence, to date, the Defendants remain delinquent in one quarter's contribution to the Health Fund.

The Funds have two separate billing policies.  One is applicable to the Health, Legal & Scholarship Funds.  The second is applicable to the Pension and Supplemental Savings Funds.  The policy regarding the Health Fund group is to pre-bill for the upcoming quarter, so that a payment is made before the end of the first month of the quarter to cover the employees for benefits for the full three months of the quarter.  If there is a change of status (i.e. the employee is terminated or goes on a leave of absence), the employer takes a credit in the following quarter for the weeks not worked, but for which contributions were previously made.  Pursuant to the Rules promulgated by the

Trustees, weeks worked include paid vacation and sick leave. The Pension Fund works differently, as these benefits are not distributed until retirement.       In the context of the Pension and Supplemental Savings Funds, contributing employers are required to pay for the weeks worked in the prior quarter. Thus, the payment in the first month of a quarter covers that quarter for health benefits and the previous quarter for pension benefits. The Defendants assert that they are entitled to pay the Health Fund benefits on the same basis as the Pension Fund benefits. They base their position on the language of the Agreement as requiring payments only retroactively "to cover employees who work two (2) days in each workweek". As will be demonstrated, Defendants have taken a phrase out of context seeking to be treated differently than all other contributing employers.

The parties to the Agreement[1] have granted the Funds contractual standing to bring actions to enforce employer obligations to the Funds. Article X, Section (40)(F)(1) provides:

> If the Employer fails to make required reports or payments to the Funds, the Trustees may in their sole and absolute discretion take any action necessary, including but not limited to immediate arbitration and suits at law to enforce such reports and payments, together with interest and liquidated damages as provided in the Funds' Trust Agreements, and any and all expenses for collection, including but not limited to counsel fees, arbitration costs and fees, court costs, auditors fees and interest.

Defendants have asserted that they do not have to comply with the established policies of the Health Fund, as they believe that the policies contradict the language of the Agreement.[2] The Agreement provide, in relevant part:

---

[1] The event arise under the "2003 Apartment House Agreement" and the "2006" Apartment House Agreement". (Plaintiffs' Exhibit 1). The language in both agreements are the same as relate to the present issue. If there are any differences in the terms between the two agreements, such will be pointed out. The exhibits retain the exhibit numbers assigned in the Pre-Trial Order. The Agreement has been pre-marked as Plaintiff Exhibit 1. Other exhibits referred to herein will reflect the number as pre-marked.

[2] The Employer challenges the obligation to pre-pay Health Fund, Legal Fund and Treasury Fund contributions. Accordingly, the analysis will address this issue.

> <u>The Employer agrees to make payments</u> into a health trust fund... to cover employees who work more than two (2) days in each workweek,... with health benefits <u>under such provisions, rules and regulations as may be determined by the Trustees of the Fund, as provided in the Declaration of Trust</u>... (Article X, Section 40 (A)(1)). (Emphasis added)

> <u>The Employer shall continue to contribute to the Health Fund</u> $9,750.64 per year for each employee, <u>payable when and how the Trustees determine.</u> (Article X, Section 40 (A)(2). (Emphasis addded)

Thus, the Defendants are obligated to pay an annual contribution (which goes up in each succeeding year of the Agreement), "when and how the Trustees determine" and under the rules and regulations of the Trustees. A review of the relevant Health Fund documents discloses that the Health Fund is a jointly administered benefit fund established pursuant to the Taft-Hartley Act, 29 U.S.C. 186. It is administrated by an equal number of management and union trustees. The Health Fund is governed by a Declaration of Trust and Plan, administered by the Trustees (Plaintiffs Exhibit "2"). The Trust Agreement provides in pertinent part:

**ARTICLE V**          <u>**ADMINISTRATIVE POWERS**</u>

Section 1.       The Trustees shall have all the general and incidental powers necessary or appropriate to proper administration of the Plan, and the Trust Fund,....Included within such Trustee powers, but not by way of limitation, shall be the power:...

> (f) To interpret, in the Trustee's sole discretion, all terms in this Trust Agreement or in the Plan, including the resolution or clarification or any ambiguities, omissions or inconsistencies;

> (g) To make, modify or repeal rules and regulations which the Trustees, in their sole discretion deem necessary or proper for administering the Plan or carrying out the provisions of this Trust Agreement.

**ARTICLE VIII**          <u>**OBLIGATIONS OF EMPLOYERS**</u>

Section 1.    <u>Acceptance of Trust Agreement.</u>   Each Employer, upon the signing of a Collective Bargaining Agreement or Participation Agreement, or upon remitting contributions to the Trust Fund, shall be deemed thereby to have agreed to all provisions of this Trust Agreement, to such amendments thereto as the Trustees may adopt pursuant to Article IX, and to all rules and regulations established by the Trustees.

Section 2.    <u>Employer Contributions.</u>  <u>Employer Contributions</u> shall be made in accordance with the Collective Bargaining Agreement or Participation Agreement and <u>shall be paid to the Trust Fund at the intervals stated in the Collective Bargaining Agreements or Participation Agreements, or, if no such intervals are stated, in accordance with the regulations of the Trustees.</u> (Emphasis added)

As to remedies available to the Funds in cases of employer delinquencies, the Trust was amended to provide:

Section 6.    <u>Remedies in Event of Employer Default.</u>  Upon the failure of any Employer to make any contribution or report required by this Article, a Collective Bargaining Agreement, or a Participation Agreement, within 30 days after such contribution or report is payable or due, the Trustees may in their sole and absolute discretion, take any action necessary, including arbitration, to enforce the making of such report or the payment of such contribution. In additions to, or in lieu of, other remedies provided by law, the Trustees may collect interest and liquidated damages for any contribution made after the due date designated in the collection policy approved by the trustees.  The Trustees shall adopt the interest rate and may adjust it from time to time based upon prevailing interest rates or other factors that the Trustees deem to be relevant. The rate for liquidated damages shall be adjusted at any time that the interest rate is adjusted, so that the sum of the nominal annual rates of interest and liquidated damages will be 30%.  In any case that arbitration or legal action becomes necessary to collect delinquent contributions, the Trustees shall also be entitled to recover any and all expenses of the collection action, including, bu not limited to, counsel fees, audit fees, arbitration costs and fees, and court expenses.

As the Agreement contains no specific intervals for when or how contributions are to be made, the Defendants are required to contribute in "accordance with the regulations of the Trustees". In carrying out the function of promulgating rules, the Funds have generated a summary of its policies. The summary, entitled, "Quick Guide to Completing the Remittance Report" (Plaintiffs Exhibit "15"), advises the contributing employers of their obligations to pre-pay Health Fund (as well as Legal and Training Funds) contributions. The booklet describes how the information is to be supplied to the Funds with the corresponding payment to cover employees for health insurance for the next three months through the Health Fund. The booklet also explains how a "work week" is defined to include paid work weeks such as vacation and sick leave time. Defendants contend that Health Fund payments cannot be required in advance ostensibly because it cannot be established that in any particular week an employee come within the term "work two or more day".

It appears to come down to whose interpretations of the contract is to be accepted. Defendants assert that the Funds can only charge employers after each employee has worked more than two days in any particular week. Based upon this interpretation, the Defendants further assert that no payments have to be made until the end of a full three month period. (Defendants do not cite to a particular provision of the Agreement to support this contention, but appear to assume that because billing is on a quarterly basis for the Pension Fund, the same procedure must be followed by the Health Fund.) The Funds posit that the Health Fund has uniformly required of all contributing employers, who pay on a quarterly basis, to pre-pay three months of contributions on behalf of those employees scheduled to work more than two days per week. The Funds rely on the language of the Agreement, which incorporates the Trust Fund Agreements, which give the Funds the absolute right to create rules and regulations and which grant the Trustees the exclusive right to interpret the terms of the Trust documents. See e.g. Board of Trustees v. Calif. Coop. Company, 877 F2d 1415 (9th Cir.

1989).

While the Defendants assert that their interpretation of "how and when" contributions must be made is correct, the Trustees have been vested with the power

> "To interpret, in the Trustees' sole discretion all terms in this Trust Agreement or in the plan, including the resolution or clarification of any ambiguities, omissions or inconsistencies." (Plaintiffs Exhibit 2 at page 12).

The Funds have promulgated rules as to the "how and when" Health Fund contribution must be paid. Payment is required in advance for the entire upcoming calender quarter. This has always been the policy and Defendants will be unable to identify a single scenario where quarterly contributors subject to the same collective bargaining agreements pay for health issuance after the benefit has already been provided.

Defendants have admitted that they are bound by the Collective Bargaining Agreements. The language of the Agreement binds Defendants to the rules of the Trustees. The Agreement, provides:

> The Employer agrees to make payments into a health fund, known as the "Building Service 32B-J Health Fund" to cover employees covered by this Agreement, who work two or more days in each workweek,...with health benefits under such provisions, rules and regulations as may be determined by the Trustees of the Fund, as provided in the Declaration and trust... (Plaintiffs Exhibit 1, Article 40 (A)(1))

Even though the Funds are not party to the Agreements, by entering into the Agreements the Defendants full well knew, that by accepting the contributions of Defendants, the Funds would be obligated to provide benefits to Defendants' employees. It is inconceivable for Defendants to avail themselves of the benefits of the Funds without also being subject to rules that govern the Funds. See Plumbers and Steamfitters Local No 15 Pension Fund v. Vertex Construction Co., 932 F2d 1443, 1451 (11th Cir. 1991); New York State Teamsters Conference v. Boening Brothers, 92 F3d 127 (2d Cir 1996). Once the Defendants intended for their employees to be covered by the respective

Funds, it necessarily follows that Defendants are contributing employers under the Trust Agreement and bound by its terms.  Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F2d 1491, 1494 (9th Cir.  1990)

Defendants focus on the phrase that contributions to the Health Fund are required to be made on behalf of employees "who work two or more days per week", to mean that payments cannot be required by the Health Fund until every employee has actually worked those two or more days in any particular week.  Defendants assert that Defendants, as well as the thousands of other contributing employers, do not have to pay for health insurance until after the work has been performed.  And then the payments do not have to be paid until the end of the respective calendar quarter.  The problem with the argument, is that it isolates a particular phrase and then assigns it a definition, which contradicts the remainder of the Agreement.  Moreover, as demonstrated above, this convoluted definition would require a total rejection of the overall language of the Collective Bargaining Agreements, as well as a rejection of the right by the Health Fund to promulgate rules and regulations and to determine how and when the Health Fund contributions are to be paid.

Under Section 502 of ERISA (29 USC 1132) the Funds are entitled to judgment for all amounts owed and not paid since commencement of the action.  In addition, the Funds are entitled to the panoply of remedies provided in ERISA.  These remedies are mandatory.  Building Service 32B-J Health Fund v. Triangle Services, 2006 U.S. Dist. Lexis 85612*7 (S.D.N.Y. November 21, 2006).  At hand, the Funds have sued to enforce their right to receive payment under Section 1145, pursuant to Section 1132(g)(2), which provides:

> In any action under this subtitle by a fiduciary for or on behalf of a plan
> to enforce section 1145 in which a judgment in favor of the plan is awarded,
> the Court shall award the plan – (A)the unpaid contributions, (B) interest on the
> unpaid contributions, ( C) an amount equal to the greater of –(I) interest on
> the unpaid contributions, or (ii) liquidated damages …., (D) reasonable attorney's

fees and costs of the action, to be paid by the defendant, and (E) such other
legal or equitable relief as the court deems appropriate.

So, even though subsequent to the commencement of this action, the Defendants have paid down a large portion of their delinquencies, the full gamut of ERISA relief is available and mandatory. See, Iron Workers Dist. Council of Western N.Y. and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1506-1507 (2d Cir. 1995) (concluding that a plan is entitled to all forms of relief not already received under Section 1132(g)(2) if contributions remain due when the plan sues for relief under Section 1145) ("[T]he amount of an award of interest or liquidated damages should logically be predicated upon the amount of the unpaid contributions originally at issue, whether or not outstanding at the time of judgment, since that amount correctly measures the damage caused by the delinquency.").

The Funds will establish that at the time this action was commenced, and after giving the Defendants the benefit of doubt in all areas raised by Defendants, the total principal owed included the unpaid contributions due in April, July and October 2008, the unpaid prepayment of a quarter of the Health, Legal and Scholarship Funds, amounts of underpayments as found by the auditors, and other underpayments as identified in the Statements of Account. In addition, there was a delinquent payment that accrued while this action was pending. The Court is mandated to assess interest at the rate assessed by the Funds (6% per annum) and the 20% liquidated damages figure in accordance with ERISA on each of these delinquencies. Finkel v. Tech Man Inc. 2006 U.S. Dist Lexis 97545*10 (EDNY Nov. 27, 2006); Building Service 32B-J Pension Fund v. Vanderveer Estates Holding LLC, 121 F. Supp 2d 750, 758 (S.D.N.Y. 2000), adopted, 2007 U.S. Dist Lexis 8447 (E.D.N.Y. Feb 6, 2007).

## PLAINTIFFS' CONTRACT CAUSE OF ACTION

Identified in the Statement of Account are a number of assessments of interest and liquidated damages claims for principal that was paid late, but nonetheless paid before this action was commenced.   Under ERISA, the statutory remedies are only available based upon unpaid principal as had existed at the time the lawsuit commenced and for the principal that accrued during the pendency of the suit.  Accordingly for the limited claims of late payments that were received prior to the commencement of this action, the Funds are entitled to contractual relief. Contractual interest as well as liquidated damages are proper.  Board of Trustees of Local 41 IBEW v. Zacher, 771 F. Supp. 1323, 1332 (W.D.N.Y. 1988).   The Agreement binds the Defendants to the Trust Agreement, which in turn binds the Defendants to all rules and regulations promulgated by the Funds. The Rules (Plaintiffs Exhibit 16"), require the assessment of a 30% penalty, which includes interest and liquidated damages, on all delinquent contributions.   The funds will seek this assessment on the delinquencies which had existed, but which were paid prior to the commencement of this action.

## PLAINTIFFS ARE UNDER NO EXHAUSTION REQUIREMENT

Defendants continue to raise as an affirmative defense a contention that the Funds failed to exhaust their administrative remedies.  Specifically, Defendants point to Article V(A)(1) of the Funds' Rules and Procedures (Plaintiffs Exhibit "16") and argue that the Funds failed to provide Defendants with the required notice of delinquency.  This is simply not true.  The Funds routinely issue computer-generated delinquency statements to delinquent employers, and did so in this case.  The fact that Defendants president may testify that he did not see or receive the statement does not operate to overcome this, and as explained below, it is not even relevant.

Defendants have relied on the Plan's Rules and Procedures to make their point, but unfortunately have done so by omitting relevant provisions from that same set of Rules and Procedures; provisions which completely demolish Defendants' position. To begin with, Defendants leave out the opening language of Article V, and goes straight to V (A)(1). Article V actually begins as follows:

> "V. **Demands for Payment.** The funds shall maintain a system to monitor employer contributions and identify delinquencies as soon as administratively practicable. The following steps will be taken when any delinquency has been identified, <u>except as provided in VII.</u>" (emphasis added).

Defendants then makes no reference at all to Article VII, upon which Article V's procedures are expressly predicated. Article VII provides that:

> "VII.   Acceleration or omission of collection procedures.
> A.   In any case in which the funds or their counsel obtain information from which it appears that the funds' ability to collect amounts owed by an employer may be diminished by following the schedule or steps prescribed for the normal collection procedure, <u>any or all of the steps set forth in this procedure may be accelerated or omitted.</u> (emphasis added) in order to initiate formal collection action as quickly as possible, including (if appropriate in the judgment of counsel) <u>an application for preliminary relief pending final resolution of a collection proceeding.</u>" (Emphasis added)

As if the above language was not clear enough as to the Funds' authority to bypass the collection process if they, or their counsel, deem it advisable, Article VII goes on to further provide that:

> "B.   No employer shall be entitled to defend an enforcement action on the ground that any step in the funds' collection process has been accelerated or omitted."

Defendants, of course, are not entitled to selectively quote from certain provisions of a Plan document and ignore other provisions that render its position untenable. The Supreme Court has held that for an exhaustion defense to succeed in an ERISA action, the relevant

agreement or document must expressly condition a plan fiduciary's authority to bring suit on first exhausting the remedy provided.  Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 374 (1984).Here, not only does the Plan document fail to expressly do so, it expressly does the opposite — it states unequivocally that failure to follow collection procedures cannot be a defense to an ERISA enforcement lawsuit, including an application for preliminary relief pending final resolution of a collection proceeding. (Article VII, A)   Defendants' argument is therefore refuted by the very document Defendants rely on, and since this argument constitutes Defendants' sole ground for claiming that the Funds cannot succeed on the merits, Defendants are left with the tacit admission that the Funds' cause of action is meritorious and must succeed.

Defendants assert that the Agreement itself:

"provides for administrative remedies prior to the initiation of litigation, including plaintiffs and the employer discussing the dispute, providing notice of late payment, and arbitration." (See Defendants' Statement of the Elements of Defendants' Defenses, page 5)

There is no such language in the Agreement.  Rather the Agreement states:

"If the Employer fails to make required reports or payments to the Funds, the Trustees may in their sole and absolute discretion take any action necessary, including but not limited to immediate arbitration and suits at law to enforce such reports and payments, together with interest and liquidated damages as provided in the Funds' Trust Agreements, and any and all expenses for collection, including but not limited to counsel fees, arbitration costs and fees, court costs, auditors fees and interest." (Plaintiffs Exhibit 1, Article X, Section 40 (F)(1))

Absent from this language are all the assertions of the Defendants.  There is no discussion requirement.  There is no notice requirement.  And there is no arbitration requirement.  The Funds right to bring this action without exhaustion is further supported by the Rules as promulgated by the Trustees.  Where there is a delinquent contributing employer, the objective is to compel the employer to pay its obligations as quickly and as expeditiously as possible and

in accord with the mandates of ERISA.  In this context, the Rules promulgated by the Funds (and as agreed to by the Defendants) admonishes that "The Board of Trustees has a fiduciary obligation to collect all money that is due and owing to the Building service 32BJ Benefit Funds."(Plaintiffs Exhibit 16, page 1, Introduction).  As noted above, the Funds have been authorized to bypass all collection procedures putting contributing employers on notice that failure to follow any of the published collection procedures cannot be raised as an affirmative defense.

Defendants assert that the Funds brought this action in bad faith.  Defendants argue that the bad faith is manifested by the rush of an audit and not following alternative avenues of relief.  The Funds posit that when this action was commenced, it was due to the Defendants' nine month refusal to pay any contributions and the unilateral refusal to pay close to three quarters of a million dollars, an amount not disputed as being owed.  This figure was compounded by the three year refusal to pay contributions when same become due and the continual one quarter lag in payments to the Health Fund.  Worsening the scenario were the discrepancies found in the audits resulting in further underpayments.

Defendants fault the Funds for issuing Remittance Reports with erroneous information.  What Defendants refuse to acknowledge to the Court, is that the information contained in the Remittance Report is based solely on the information provided by Defendants.  If a Remittance Report is returned to the Funds with erroneous entries or without updates, the errors will have been perpetuated by the Defendants, not by the Funds.

Contrary to the arguments of Defendants, the Funds are not claiming missed contributions based upon errors in their own bills.  As emphasized above, to the extent that errors remained on the Remittance Reports, it was incumbent upon the reporting employer to update

and correct that information.  Moreover, even if the Reports contained errors, such does not relieve the contributing employer from paying that which it actually owes.  See, e.g. <u>Borgos v. A & P Brush Co.</u>, 1995 U.S. Dist. Lexis 5225*13 (S.D.N.Y. April 15, 1997);  <u>Building Service 32B-J Health Fund v. Triangle Services</u>, 2006 U.S. Dist. Lexis 85612*7 (S.D.N.Y. November 21, 2006).

Defendants assert that bad faith is established because at the time suit was commenced the Funds did not have proper evidence to back up their claims.  No citation of authority is presented for this novel defense.  As a matter of law, even if the figures then available to the Funds were wrong, such does not in any manner relieve the Defendants of their ERISA obligations. <u>Triangle Services</u>, supra.

Defendants complain that the accrual of interest and damages were accrued from the bad faith delay in bringing this action.  Such contradicts Defendants other arguments wherein they claim the action to be premature.  Regardless, all Defendants had to do to minimize their exposure was to pay the undisputed amounts.   In the end, if monies are owed, the assessment of interest and liquidated damages are mandatory. <u>Triangle Services,</u> supra.

Dated: New York, New York
         November 3, 2009

*Raab, Sturm, Goldman & Ganchrow, LLP*

By: Ira A. Sturm (IS-2042)
Attorneys for the Plaintiffs Funds
317 Madison Avenue, Suite 1708
New York, New York 10017
(212) 683-6699