```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -x

BUILDING SERVICE 32BJ HEALTH         :
FUND et al.,
                                     :
              Plaintiffs,
                                     :            MEMORANDUM DECISION
         - against -
                                     :            08 Civ. 9264 (DC)
RENAISSANCE EQUITY HOLDINGS,
LLC et al.,                          :

              Defendants.            :

- - - - - - - - - - - - - - - - - -x
```



APPEARANCES:        RAAB, STURM, GOLDMAN & GANCHROW, LLP
                       By:  Ira A. Sturm, Esq.
                            Ari Ganchrow, Esq.
                       317 Madison Avenue, Suite 1708
                       New York, New York  10017
                            Attorneys for Plaintiffs

                    STAHL & ZELMANOVITZ
                       By:  Evan M. Newman, Esq.
                            Joseph Zelmanovitz, Esq.
                       747 Third Avenue
                       New York, New York  10017

                            -and-

                    SUSAN G. KELLMAN, ESQ.
                    25 Eighth Avenue
                    Brooklyn, New York  11217
                         Attorneys for Defendants

**CHIN, District Judge**

This is an Employee Retirement Income Security Act ("ERISA") collection case brought by plaintiffs Building Service 32BJ Health Fund et al. (the "Funds") against defendants Renaissance Equity Holdings LLC et al. ("Renaissance"). The Funds seek to collect contributions that Renaissance failed to pay into various employee benefit funds from 2005 through 2009. On

December 30, 2009, after a three-day bench trial, I issued a written decision. See Bldg. Serv. 32BJ Health Fund v. Renassiance, No. 08-9264 (DC), 2009 WL 5253548 (S.D.N.Y. Dec. 30, 2009). Now, the Funds move for reconsideration of one aspect of that decision, and they have also moved for attorneys' fees and costs and submitted a proposed final judgment. Renaissance opposes all applications. I address each issue in turn.

I.  **Motion for Reconsideration**

The Funds have moved for reconsideration of one aspect of my December 30, 2009 decision -- namely, the date that I set for ERISA-mandated interest and liquidated damages to accrue on any payment deficiencies that plaintiffs discovered through audits. I ruled that interest and liquidated damages will accrue from the date on which the Funds' post-audit demand became final. The Funds argue that interest and liquidated damages should accrue from the date on which Renaissance's contributions were initially due. The motion for reconsideration is denied.

The decision to grant or deny a motion for reconsideration falls squarely within the discretion of the district court. See Devlin v. Trans. Comms. Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." Shrader v. CSX Trans., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Here, the Funds make the same arguments that they made during trial and in their post-trial letter brief. Because they do not invoke an appropriate ground for reconsideration, the

motion is denied, and the Court's December 30, 2009 ruling stands. Nevertheless, for the sake of clarity, I provide some more background regarding my decision on this issue.

ERISA mandates that the Court impose "interest" on unpaid contributions using either "the rate provided under the plan" or the rate provided in 26 U.S.C. § 6621. See 29 U.S.C. § 1132(g)(2). ERISA does not, however, set a date for the accrual of interest. See id.; id. at § 1145. I follow New York State Teamsters Council Health & Hospital Fund v. City of Utica, 643 F. Supp. 619, 622 (N.D.N.Y. 1986), and Finkel v. Rico Electric Inc., No. 97-2145 (ARR), 2009 WL 3367057 at *6 (E.D.N.Y. Oct. 16, 2009), in holding that interest and liquidated damages will be assessed from the date on which the Funds' post-audit demand became final.

The Funds are correct that the terms of their plan's rules suggest a different date of accrual. I am not, however, imposing a remedy under the plan. Rather, I am imposing a remedy that is prescribed by ERISA, and ERISA is silent about the date of accrual. Though the statute refers to the terms of the plan to set a rate of interest, it does not refer to the terms of the plan for a date of accrual. In the particular circumstances of this case, I conclude that the dates on which the post-audit demands became final are reasonable dates from which to run interest and liquidated damages. See City of Utica, 643 F. Supp. at 622 ("plaintiffs . . . are also entitled to an award of interest on unpaid contributions . . . to be calculated from . . . the date the plaintiffs demanded payment of the unpaid contributions");

Finkel, 2009 WL 3367057 at *6 ("[I]nterest on all of the Plans should only begin to run from . . . the date plaintiff sent a copy of the audit report to defendant and demanded payment").

The trial revealed that the Funds' explanations of its policies and procedures were lacking. Renaissance was understandably confused about its responsibilities with regard to the requirement that it report new employees to <u>both</u> the Funds and the union, with regard to the "pre-payment" requirement, and with regard to the proper computation of "hours worked." Compounding the confusion, the Funds made high post-audit demands on Renaissance, and then lowered their demands once Renaissance pointed out computational errors. Given these circumstances, it is appropriate for interest and liquidated damages to run from the date on which the post-audit demands became final. Because ERISA is silent regarding accrual date, I conclude that I have the discretion to do so. For the 2006-2007 audit, the date is June 29, 2009. For the 2008 audit, the date is July 2, 2009.

## II. Attorneys' Fees and Costs

The Funds seek attorneys' fees of $99,956.25 and costs and other disbursements of $8,912.81, based on the following:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Ira A. Sturm | 318.25 | $275 | $87,518.75 |
| Ari Ganchrow | 49.75 | $250 | $12,437.50 |
| | | | $99,965.25 |

| Category of Expense | Cost |
|---|---|
| Audit | $6,800.00 |
| Deposition & Trial Transcripts | $1,762.81 |
| Filing Fee | $350.00 |
| | $8,912.81 |

(Sturm Aff. ¶¶ 7-8).

### A.   Attorneys' Fees

#### 1.   Applicable Law

In the Second Circuit, attorneys' fees awards are now calculated based on the "presumptively reasonable fee" approach adopted in Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 & n.4 (2d Cir. 2008). The court sets a "reasonable hourly rate," bearing in mind all the case-specific variables, and the court then uses that reasonable hourly rate to calculate the "presumptively reasonable fee" by multiplying the rate by the number of hours reasonably expended. Arbor Hill, 522 F.3d at 190; see Porzig v. Dresdner, Kleinwort, Benson, North America LLC, 497 F.3d 133, 141 (2d Cir. 2007) ("The presumptively reasonable fee analysis involves determining the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award.").

Although the court in Arbor Hill did not explicitly explain what should happen once the "presumptively reasonable fee" was set, courts have been adjusting the "presumptively reasonable

fee" for traditional factors such as the degree of the plaintiff's success. See, e.g., Barfield, 537 F.3d at 151-52 (affirming 50% deduction for lack of success); Robinson v. City of N.Y., No. 05-9545 (GEL), 2009 WL 3109846, at *3 (S.D.N.Y. Sept. 29, 2009) ("Following the determination of the presumptively reasonable fee, the court must then consider whether an upward or downward adjustment of the fee is warranted based on factors such as plaintiffs' success in the litigation."); McDow v. Rosado, 657 F. Supp. 2d 463, 467 (S.D.N.Y. 2009) ("unstated, but again presumed, is that the presumptively reasonable fee is just that -- a presumptive figure that can be further adjusted as circumstances warrant"). Hence, the process is really a four-step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award.

A reasonable hourly rate is "the rate a paying client would be willing to pay." Arbor Hill, 522 F.3d at 190. In setting the rate, the court is to consider the traditional factors first enumerated in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93, 96 (1989):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed

> by the client or the circumstances; (8) the
> amount involved in the case and the results
> obtained; (9) the experience, reputation, and
> ability of the attorneys; (10) the
> "undesirability" of the case; (11) the nature
> and length of the professional relationship
> with the client; and (12) awards in similar
> cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19). The court must also bear in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." Arbor Hill, 522 F.3d at 186. The court should also consider that the client "might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case." Id.

A court may determine the reasonable hourly rate by relying both on "its own knowledge of comparable rates charged by lawyers in the district," Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004), as well as on "evidence proffered by the parties." Farbotko v. Clinton County of N.Y., 433 F.3d 204, 209 (2d Cir. 2005). "[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment." LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998).

As Judge Francis recently noted, although the Second Circuit in Arbor Hill held that the Johnson factors are to be considered in setting the reasonable hourly rate, some of the factors "are more logically related to determining the number of hours that should be compensated, and others, such as the extent

of success, might be considered in setting the number of compensable hours or in making a further adjustment after a presumptive fee has been established." Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 537 n.1 (S.D.N.Y. 2008); accord Robinson v. City of N.Y., 2009 WL 3109846, at *4 n.6. It is clear, in any event, that adjustments must be made to the number of hours based on case-specific factors, including, for example, deductions for "excessive, redundant or otherwise unnecessary hours." Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999); see also Nature's Enters., Inc. v. Pearson, No. 08 Civ. 8549 (JGK), 2010 WL 447377, at *10 (S.D.N.Y. Feb. 9, 2010). The key is that the Johnson factors are weighed at some point in the process. Rozell, 576 F. Supp. 2d at 537 n.1.

### 2. Application

Taking into account the Johnson and other relevant factors, I determine the reasonable hourly rates; I determine the reasonable number of hours expended; I multiply the two to arrive at the "presumptively reasonable fee"; and I make appropriate adjustments to arrive at the final fee award.

#### a. The Hourly Rates

The hourly rates that the Funds request for Ira A. Sturm and Ari Ganchrow are reasonable.

Mr. Sturm requests $275 per hour. He has been practicing law for over 30 years, and has spent a "significant amount" of his time successfully representing labor unions and trust funds before the National Labor Relations Board, in state

and federal trial courts, before the First and Second Departments of the New York Appellate Division, the Second Circuit, and the D.C. Circuit.  (Sturm Aff. ¶¶ 3-4).  He has acted as Lead Counsel for "numerous federal litigations arising under ERISA."  (Id.).  He is a named partner in his firm, "a boutique" that "specializes in the field of labor and employment law, with ERISA litigation constituting a major portion of [its] business."  (Id. at ¶ 2).

Mr. Ganchrow requests $250 per hour.  (Id. at ¶ 7).  He has been practicing law since 2001.  (Id. at ¶ 6).  He spends his time almost exclusively representing the Funds, overseeing all of their collection matters.  (Id.).  He is a named partner at the same firm, and serves as head of the collections department.  (Id.).

Both attorneys seek below-market rates for their work based upon the reduced rates that they typically charge the Funds.  The rates are reasonable for this type of case.  See, e.g., Tr. of the E. States Health & Welfare Fund v. Crystal Art Corp., No. 00-0887 (NRB), 2004 WL 1118245, at *6 (S.D.N.Y. May 19, 2004) (approving $350 per hour for a named partner with approximately 30 years litigation experience; $275 per hour for another partner; and $200 for associates); Veltri v. Bldg. Servs. 32BJ Pension Fund, No. 02-4200 (HB), 2004 WL 856329, at *4 (S.D.N.Y. Sept. 16, 2003) (approving rate of $325 per hour); I.L.G.W.U. Nat'l Ret. Fund v. ESI Group, Inc., No. 92-0597 (PKL), 2003 WL 135797, at *3 (S.D.N.Y. Jan. 17, 2003) (approving rate of $350 per hour for partner with over 20 years of experience).

### b. Number of Hours

Renaissance objects to the number of hours that the Funds have billed. In particular, they object to the time that the Funds seek for (1) preparing an order to show cause; (2) preparing the motion for reconsideration; (3) all hours worked by Mr. Ganchrow; and (4) a number of other charges that they deem to be not well-explained or unnecessary. All of Renaissance's objections are overruled.

The total number of hours that the Funds' attorneys expended on this case is reasonable given the amount of work that it entailed. In particular, the attorneys were required to review hundreds of pages of detailed accounting records, and to conduct a three-day trial. Although Renaissance objects to the Funds' use of a second partner -- Mr. Ganchrow -- on the case, rather than an associate or paralegal, the rate that Mr. Ganchrow charges is below-market.

### c. The Presumptively Reasonable Fee

The presumptively reasonable fee is $99,965.25, calculated as follows:

| Attorney | Hours | Rate | Total |
| --- | --- | --- | --- |
| Ira A. Sturm | 318.25 | $275 | $87,518.75 |
| Ari Ganchrow | 49.75 | $250 | $12,437.50 |
|  |  |  | $99,965.25 |

### d. Adjustments

I conclude that no further adjustments are necessary or appropriate. The Funds prevailed on their principle claim, and thus no deduction is necessary to account for lack of success. A fee of $99,965.25 is reasonable in light of the result achieved and all the circumstances of the case. Accordingly, I will award the presumptively reasonable fee.

### B. Costs

As for costs, Renaissance challenges only the amount that the Funds seek as reimbursement for the audits. A charge of $6,800.00 for two extensive audits is reasonable. The objection is overruled. The costs are allowed in full.

### III. Proposed Judgment

The Funds' proposed judgment suggests that the Court award damages based upon the calculations contained in the below chart. The Funds do <u>not</u> seek to recover the figures that are underlined because these represent late principal that <u>has</u> already been paid.

|  | Principal | Interest | Liq. Dam. |
|---|---|---|---|
| Regular Delinquencies (Murphy Aff. Ex. A) | $ 220,464.21 | $ 18,215.17 | $ 44,092.84 |
| Missing "Prepayment" (Id. Ex. B) | $ 166,459.79 | $ 16,716.37 | $ 34,188.62 |
| 2005-2007 Audit (Id. Ex. C.) | $ 92,403.95 | $ 3,696.16 | $ 18,480.79 |
| 2008 Audit (Id. Ex. D) | $ 55,631.12 | $ 1,947.09 | $ 11,126.22 |
| Late Payments - ERISA Remedies (Id. Ex. A) | <u>$ 1,193,667.54</u> | $ 21,084.24 | $ 238,733.51 |
| Late Payments - Contractual Remedies (Id. Ex. E) | <u>$ 694,698.17</u> | $ 5,981.67 | $ 23,960.92 |

Renaissance objects on the following grounds: (1) there is "no evidentiary basis" for the amounts of principal that the Funds seek; (2) ERISA does not mandate an automatic 20% liquidated damages penalty; (3) the Funds have wrongly calculated interest on the missing "pre-payment" from November 2007, rather than August 2008; (4) the Funds have wrongly accrued interest on the audits from June 2009 rather than July 2009; and (5) the Funds have wrongly charged interest for the payment for the fourth quarter of 2005 through February 2008 rather than January 2008. (Def. Mem. at 2).

First, I accept the principal amounts that the Funds propose. Attached to their proposed judgment, the Funds have provided detailed spreadsheets setting forth the calculations -- calculations that David Murphy has sworn to be correct to the best of his knowledge. At trial, they provided more extensive documentation of their accounting methodologies, and sworn testimony from Mr. Murphy and the auditor, Deborah Francis-Alexis, both of whom I found to be credible. At the very least, the Funds have made a prima facie case of the amounts that they are owed. Consequently, the burden shifted to Renaissance to provide competent evidence to raise a question as to the accuracy of the amounts. Kool-Temp Heating & Cooling, Inc. v. Ruzika, 776 N.Y.S.2d 335, 336 (3d Dep't 2004). See also Drug Guild Distribs. v. 3-9 Drugs, Inc., 715 N.Y.S.2d 442, 443 (2d Dep't 2000). Renaissance has not proffered any documentation or alternative calculations. Rather, it simply proposes eliminating entire

categories of principal that it conclusorily deems to be unfounded. (Def. Mem. at 8). The objections to the amounts of principal that the Funds seek are overruled.

Second, Renaissance is correct regarding the calculation of liquidated damages under ERISA. ERISA does <u>not</u> set a flat rate of liquidated damages of 20%. It explicitly requires a fund administrator to apply the plan's rate of liquidated damages, but it <u>caps</u> the total permissible liquidated damages at 20% of principal. See 29 U.S.C. § 1132(g)(2)(C)(ii) ("[T]he court shall award the plan . . . liquidated damages <u>provided for under the plan</u> in an amount not in excess of 20 percent")(emphasis added)). Further, I already explicitly ruled on this issue in the December 30, 2009 decision. See <u>Bldg. Serv. 32BJ Health Fund v. Renassiance</u>, 2009 WL 5253548, at *6 n.1. Here, the plan charges liquidated damages of 2% per month. (Pl. Tr. Ex. 16, Sec. 111(B)). In certain categories of principal delinquencies, the accrual date is so far in the past (i.e., more than 10 months), the statutory maximum of 20% is reached. In these cases, I will leave the proposed award of 20% unchanged. In other cases, however, the late payments at issue were overdue only weeks, a month, or a few months. It is not fair -- and it is not the law -- that the Funds should charge a 20% flat penalty in these cases. In these categories of principal, there are dozens of accrual dates. The Court estimates that the average delay is approximately 2.8 months. Accordingly, I set liquidated damages

on these categories of principal at 5.6%. Renaissance's objection is sustained, to this extent.

Third, I believe that Renaissance is mistaken that the Funds have charged interest from the wrong date for the "pre-payment." The nomenclature used in this trial was not ideal. At various points, the phrase "pre-payment" was used to refer to both the payment to cover the final 2.9 months of 2005 <u>and</u> the advance payment requirement. In Exhibit B, the Funds are referring to the payment to cover the final 2.9 months of 2005. (Murphy Aff. ¶ 3, Ex. B). In the December 30, 2009 decision, I ruled that "the contribution for the final 2.9 months of 2005" would accrue interest and penalties from November 16, 2007. This is what the Funds' proposed judgment reflects. (<u>Id.</u>). Renaissance's objection is overruled.

Fourth, Renaissance is mistaken about the "final" audit dates. The revised 2005-2007 audit was finalized on June 29, 2009. (<u>See</u> Pl. Tr. Ex. 18). The revised 2008 audit was finalized on July 2, 2009. (<u>Id.</u>). These are the dates that the Funds' proposed judgment uses. (<u>See</u> Murphy Aff. ¶¶4-5, Exs. C & D). Renaissance's objection is overruled.

Fifth, and finally, I overrule Renaissance's objection as to the date that the Funds received a partial payment for the final 2.9 months of 2005. There is conflicting evidence on this point, and ultimately, I find the Funds' account more compelling. In any case, it is a small difference in the scope of the judgment in this case.

Based on the above rulings, the amended judgment will be based on the calculations set forth below. The underlined numbers will <u>not</u> be awarded as they have already been paid and serve only for reference.

| | Principal | Interest | Liq. Dam. |
|---|---|---|---|
| **Unpaid Delinquencies** | | | |
| Regular Delinquencies (Murphy Aff. Ex. A) | $ 220,464.21 | $ 21,522.13 | $ 44,092.84 |
| Missing "Prepayment" (Id. Ex. B) | $ 166,459.79 | $ 19,213.27 | $ 34,188.62 |
| 2005-2007 Audit (Id. Ex. C.) | $ 92,403.95 | $ 5,082.22 | $ 16,632.71 |
| 2008 Audit (Id. Ex. D) | $ 55,631.12 | $ 2,781.56 | $ 10,013.60 |
| **Paid Delinquencies** | | | |
| Late Payments - ERISA Remedies (Id. Ex. A) | $ <u>1,193,667.54</u> | $ 21,084.24 | $ 66,845.38 |
| Late Payments - Contractual Remedies (Id Ex. E) | $ <u>694,698.17</u> | $ 5,981.67 | $ 23,960.92 |

The total damages award is $806,358.23 -- $534,959.07 in unpaid principal, $75,665.09 in prejudgment interest, and $195,734.07 in liquidated damages. Interest is calculated through today.

## CONCLUSION

For the reasons set forth above, Renaissance's motion for reconsideration is DENIED. The Funds' motion for attorneys' fees and costs is GRANTED. The Court will enter a final judgment in accordance with the foregoing.

SO ORDERED

Dated:  New York, New York
        April 9, 2010

DENNY CHIN
United States District Judge